**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathleen C. Campbell, individually and as the successor in interest of Ruth C. Pritchard, Deceased, Capitol Enquiry, Inc.; and Capital Education, Inc., | No. CV 05-0880-PHX-SMM |
| Plaintiffs, | **ORDER** |
| vs. | |
| Judy Fernando-Sholes and Bruce A. Sholes, individually and as husband and wife; Bruce A. Sholes, doing business as Law Offices of Bruce A. Sholes; Oasis at Wild Horse Ranch, LLC, an Arizona limited liability company; John C. Kubasch, individually, and John C. Kubasch and Jane Doe Kubasch, husband and wife; and Does 1-20, | |
| Defendants. | |

Before the Court is Defendant Bruce A. Sholes' ("Sholes"), individually and doing business as Law Offices of Bruce A. Sholes, Motion to Set Aside or Amend Default Judgment. (Dkt. 75). After considering both parties' briefs, the Court issues the following Order.[1]

## BACKGROUND

Defendants in the instant case originally filed an Arizona state court action against, among others, Plaintiff Kathleen C. Campbell ("Campbell"), for fraudulently increasing

---

[1]Defendant requested oral argument in connection with this Motion to Set Aside. The parties have had the opportunity to submit briefing and, accordingly, the Court finds the pending motion suitable for decision without oral argument. See LRCiv 7.2(f).

the price of real property purchased by Defendants at a bankruptcy auction. In December 2002, Campbell removed this state court case to federal court. See Oasis at Wild Horse Ranch, LLC, et al. v. Heideman, et al., CV-02-686-PHX-MHM ("Oasis"). On March 26, 2003, the Honorable Mary H. Murguia granted Campbell's Motion to Dismiss or, in the alternative, Motion for Summary Judgment against the instant Defendants. (Oasis, Dkt. 55.)

On January 9, 2004, Plaintiffs in the instant case filed a malicious prosecution case against Defendants in the California Superior Court for the County of Sacramento (the "Superior Court"). On March 24, 2004, the Superior Court granted Defendants' Motion to Quash Summons for Lack of Personal Jurisdiction. Then on March 23, 2005, Plaintiffs filed a Complaint for malicious prosecution against Defendants in this Court. Campbell, et al. v. Fernando-Sholes, et al., CV-05-880-PHX-SMM ("Campbell I").

On April 22, 2005, this Court issued its Standard Civil Track Initial Order, which specifically ordered Plaintiffs to effect service of the complaint and summons upon all defendants no later than 120 days after the filing of the complaint. (Campbell I, Dkt. 3, 1.) The Standard Order also warned that the action would be dismissed without further notice to Plaintiffs with respect to any defendant not served within the 120 day period pursuant to Federal Rule of Civil Procedure 4. (Id.)

On July 18, 2005, Plaintiffs filed a Motion for Extension of Time (60 days) to serve Defendants, which this Court granted on July 26, 2005. (Campbell I, Dkts. 7, 12.) The Court ordered Plaintiffs to serve Defendants no later than September 19, 2005. (Campbell I, Dkt. 12, 2:1-2.) On August 4, and August 26, 2005, Plaintiffs accomplished service on Oasis and "Law Office of Bruce A. Sholes, P.L.L.C.," respectively, by service on the Arizona Corporation Commission. (Campbell I, Dkts. 15, 16.)

On August 29, 2005, Defendants filed a Motion to Dismiss on several grounds, including that the August 4, 2005 summons served on Defendant Oasis was invalid because it was served more than 120 days after the filing of the Complaint. (Campbell I, Dkt. 13, 6-7.) Defendants further argued that "[t]he summons [sic] on other Defendants

have not been serviced [sic] and have also abated." (Id. at 7:6-7.)  On March 14, 2006, the Court granted in part and denied in part Defendants' Motion to Dismiss.  While the Court held that Plaintiffs had timely served Defendant Oasis, (Campbell I, Dkt. 20, 2:25-28) it also held that Defendants Judy Fernando-Sholes, Bruce A. Sholes, and John C. Kubasch were not timely served.  (Id. at 3:11-13.)

On April 11, 2006, Plaintiffs filed a Motion for Relief from the Court's March 14, 2006 Order dismissing Defendants Judy Fernando-Sholes, Bruce A. Sholes, and John C. Kubasch.  Plaintiffs argued that Defendants violated mandatory provisions of Arizona law by failing to advise the Arizona Secretary of State of the current addresses of their statutory agents, members, and managers, which frustrated Plaintiffs' attempts at service. (Campbell I, Dkt. 22, 5:4-7.)

On May 18, 2006, Defendants filed a Motion to Dismiss Sholes on the ground that Sholes was never served personally and that the time for service had expired.  (Campbell I, Dkt. 40, 2:22-23.)  In addition, Defendants filed a Motion to Dismiss Law Offices of Bruce A. Sholes, P.L.L.C. and Defendant Oasis on the grounds that Law Office of Bruce A. Sholes, P.L.L.C. was not a named Defendant in the case, and that service on both Law Office of Bruce A. Sholes, P.L.L.C. and Oasis through the Arizona Corporation Commission was improper.  (Id. at 7:3-9.)

On May 25, 2006, the Court affirmed its March 14, 2006 ruling dismissing Defendants Judy Fernando-Sholes, Bruce A. Sholes, and John C. Kubasch.  (Campbell I, Dkt. 42.)

On June 9, 2006 Plaintiffs filed an Opposition to Defendants' May 18, 2006 Motion to Dismiss.  (Campbell I, Dkt. 43.)  Additionally, Plaintiffs filed a Request for Entry of Default against Defendant Law Offices of Bruce A. Sholes on the grounds that Defendants' May 18, 2006 Motion to Dismiss constituted a general appearance, but that Defendant Law Offices of Bruce A. Sholes failed to file an answer or other proper response to Plaintiffs' Complaint.  (Id. at 5:10-18.)

On October 10, 2006, this Court held that Defendants' Motion to Dismiss Sholes was moot, as he had already been dismissed from the case. (Campbell I, Dkt. 47, 3:6-9.) The Court further held that service through the Arizona Corporation Commission on Law Offices of Bruce A. Sholes, P.L.L.C. was proper. (Id. at 3:20-22.) Because the difference between "Law Office of Bruce A. Sholes, P.L.L.C." and "Law Office of Bruce A. Sholes" was one of form, not substance, the Court ordered that the summons served on Law Offices of Bruce A. Sholes, P.L.L.C. be amended *nunc pro tunc*, August 26, 2005, to reflect the named Defendant, "Law Offices of Bruce A. Sholes." (Id. at 3-4.) Additionally, the Court held that service upon Defendant Oasis was proper. (Id. at 4-5.) Finally, the Court denied Plaintiffs' Application for Entry of Default against Defendant Law Offices of Bruce A. Sholes. (Id. at 4:16-20.) Instead, the Court provided Defendant Law Offices of Bruce A. Sholes sufficient time to answer or otherwise respond to Plaintiffs' Complaint. (Id.)

On March 24, 2007, Plaintiffs filed a second Application for Entry of Default of Defendants Law Offices of Bruce A. Sholes, P.L.L.C. and Law Offices of Bruce A. Sholes on the grounds that Defendants failed to plead or otherwise defend the action despite being lawfully served with summons and having ample opportunity to do so. (Campbell I, Dkt. 52, 1:19-24.) On March 28, 2007, this Court ordered the Court Clerk to enter Default against Defendant Law Offices of Bruce A. Sholes. (Campbell I, Dkt. 55, 3:13-14.) On March 30, 2007, the Court Clerk entered Default against Defendant Law Offices of Bruce A. Sholes. (Campbell I, Dkt. 56.)

On May 21, 2007, Plaintiffs filed a Motion to Transfer Action to the Tucson Division on the grounds that Defendants Oasis, Sholes, Judy Fernando-Sholes, and Law Offices of Bruce A. Sholes are all located in the Tucson area. (Campbell I, Dkt. 68, 4:6-10.) On May 30, 2007, this Court granted Plaintiffs' Motion, transferring the action to the Tucson Division. (Campbell I, Dkt. 73.) On June 26, 2007, the Tucson district judge ordered that the action be dismissed without prejudice because Plaintiffs failed to move

for default judgment. See Campbell, et al. v. Fernand-Sholes, et al.,

CV-07-248-TUC-FRZ ("Campbell II", Dkt. 74.)

On July 4, 2007, Plaintiffs filed a Motion for Relief from Judgment on the grounds that Plaintiffs' counsel believed that he could not move for default judgment until the transfer to the Tucson Division had been completed. (Campbell II, Dkt. 76, 5:19-24.) Plaintiffs further argued that because a Tucson Division case number had not been assigned to the action, counsel understood that the transfer was not yet complete. (Id.) The Tucson district judge granted Plaintiffs relief from the Court's earlier order and vacated the dismissal on March 3, 2008. (Campbell II, Dkt. 78.) Plaintiffs were granted leave to prosecute the action on or before April 15, 2008. (Id.)

On April 15, 2008, Plaintiffs filed a Motion for Entry of Default Judgment against Defendant Bruce A. Sholes/Law Offices of Bruce A. Sholes. (Campbell II, Dkt. 79). On August 8, 2008, the Tucson district judge granted Plaintiffs' Motion for Entry of Default Judgment and awarded damages of $218,832.98. (Campbell II, Dkt. 82.)

On August 22, 2008, Defendants Sholes and Law Offices of Bruce A. Sholes filed a Motion to Set Aside or Amend Default Judgment. (Campbell II, Dkt. 84.) The district judge held that because the issues raised in Defendants' Motion called this Court's rulings into question and because the transfer to the Tucson Division "only created confusion and . . . [did] not creat[e] a convenient nor expeditious resolution to this cause of action," the instant action should be transferred back to the Phoenix Division under the original case number. (Campbell II, Dkt. 88, 2-3.) The case was then transferred back to this Court on September 17, 2008. (Campbell I, Dkt. 74; Campbell II, Dkt. 89.)

Defendant argues that this Court should set aside the default judgment under Rule 60(b) of the Federal Rules of Civil Procedure on the basis of excusable neglect and fraud. Alternatively, Defendant argues that this Court should amend the default judgment under Rule 59(e) of the Federal Rules of Civil Procedure in order to correct clear error and avoid manifest injustice. Plaintiffs respond that both arguments advanced by Defendant are without merit.

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure do not recognize a "motion to reconsider." A litigant subject to an adverse judgment may file either a motion to alter or amend the judgment under Rule 59(e) or a motion seeking relief from the judgment pursuant to Rule 60(b). Fed. R. Civ. P. 59(e), 60(b). However, these rules only provide relief from judgments that are "final, appealable orders." United States v. Martin, 226 F.3d 1042, 1048 n.8 (9th Cir. 2000). Rule 59(e) allows for the alteration or amendment of a "judgment" within ten days after "entry of the judgment," Fed. R. Civ. P. 59(e), where "judgment" is defined as a decree and any order from which an appeal lies. Fed. R. Civ. P. 54(a). Rule 60(b) does not provide relief from judgments, orders, or proceedings which are not "final," that is, are not final decisions within the meaning of 28 U.S.C. § 1291 and generally cannot be appealed immediately. See Sch. Dist. No. 5 v. Lundgren, 259 F.2d 101, 104 (9th Cir. 1958); see also Fed. R. Civ. P. 60(b) advisory committee's note ("The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.").

Rule 60(b) permits reconsideration of a district court order based on: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly-discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59; (3) fraud, misrepresentation, or misconduct by an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. See Fed. R. Civ. P. 60(b)(1)-(b)(6). Rule 60 reconsideration is generally appropriate in three instances: (1) when there has been an intervening change of controlling law; (2) new evidence has come to light; or (3) when

necessary to correct a clear error or prevent manifest injustice.  Sch. Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

A Rule 60(b) motion must be brought within a "reasonable" time, which cannot be more than one year if the motion is based on mistake, newly-discovered evidence, or fraud.  See Fed. R. Civ. P. 60(c)(1).

## DISCUSSION

**I.     Defendant's Rule 60 Motion**

Defendant seeks to invoke Rule 60 in order to set aside the default judgment on one of two grounds. First, Defendant argues that his failure to respond to this Court's Order requiring Defendant Law Offices of Bruce A. Sholes[2] to answer or otherwise respond to Plaintiff's Complaint was a result of excusable neglect.  In the alternative, Defendant claims that Plaintiff's representations of the procedural history of the case and the status of the parties constituted fraud on the court, misrepresentation, or misconduct. For the foregoing reasons, both of Defendant's arguments fail.

**A. Excusable Neglect**

Rule 55 of the Federal Rules of Civil Procedure allows a court to set aside a default judgment under Rule 60[3].  TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 n.3 (9th Cir. 2001).  In turn, Rule 60 lists several factors that justify setting aside a default judgment,[4] including excusable neglect.  Fed. R. Civ. P. 60(b)(1); Laurino v.

---

[2]As the Court previously ruled that there was no distinction between "Law Offices of Bruce A. Sholes, P.L.L.C." and "Law Offices of Bruce A. Sholes," the Court's foregoing analysis will use the term "Law Offices" to refer to Sholes' law firm.

[3]Rule 55(c) reads, "Setting Aside a Default or a Default Judgment. The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."

[4]Rule 60(b) reads, "Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud . . . misrepresentation, or

- 7 -

Syringa Gen. Hosp., 279 F.3d 750, 753 (9th Cir. 2002). The Ninth Circuit follows the

Supreme Court's holding in Pioneer Investment Services Co. v. Brunswick Associates

Ltd., 507 U.S. 380, 395 (1993) that the determination of whether neglect is excusable is

an equitable one that depends on a weighing of several factors. Laurino, 279 F.3d at 753

(citing Bateman v. U.S. Postal Serv., 231 F.3d 1220, 1223-24 (9th Cir. 2000)).

The Ninth Circuit considers three factors in its excusable neglect analysis: (1)

"whether reopening the default judgment would prejudice the plaintiff"; (2) "whether the

defendant has a meritorious defense"; and (3) "whether the defendant's culpable conduct

led to the default." Employee Painters' Trust v. Ethan Enters., Inc., 480 F.3d 993, 1000

(9th Cir. 2007) (quoting TCI Group Life Ins. Plan, 244 F.3d at 696); see also Falk v.

Allen, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam). However, this test is disjunctive,

meaning that Defendant's motion to vacate the default judgment will fail if he cannot

prove any one of the factors. Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227

F.3d 1104, 1108 (9th Cir. 2000). Because Plaintiff does not allege any prejudice as a

result of reopening the judgment, the Court will not consider this factor. (Campbell I, Dkt.

90, Pls.' Resp.)

### 1.      Whether Defendant Has a Meritorious Defense

In deciding whether Defendant has presented a meritorious defense, the Court

must determine whether "some possibility" exists that the outcome of the suit after a full

trial would differ from the result reached by the default. Haw. Carpenters' Trust v. Stone,

794 F.2d 508, 513 (9th Cir. 1986). The Court finds that no such possibility exists in this

case.

Defendant presents several arguments that he asserts create meritorious defenses to

the underlying malicious prosecution claim. First, Defendant argues that Campbell has

misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been
satisfied, released or discharged; it is based on an earlier judgment that has been reversed or
vacated; or applying it prospectively is no longer equitable; or (6) any other reason that
justifies relief."

- 8 -

yet to effect proper service of process on either Bruce A. Sholes in his individual

capacity, or on the Law Offices of Bruce A. Sholes, P.L.L.C. (Campbell I, Dkt.75, Def.'s

Mot., 11:4-6). Second, Defendant contends that the Arizona statute of limitations

pertaining to malicious prosecution claims bars Campbell's claim. (Id. at 11:6-12.)

Finally, Defendant claims that Plaintiffs will be unable to establish all of the elements

required to prove their underlying malicious prosecution action. (Id. at 11:13-15.)

###### a. Service of Process on Bruce A. Sholes and Law Offices of Bruce A. Sholes, P.L.L.C.

Defendant's argument regarding ineffective service of process misses the mark.

First, Defendant's argument with respect to "Law Offices of Bruce A. Sholes, P.L.L.C."

ignores this Court's determination that the distinction between "Law Offices of Bruce

Sholes, P.L.L.C." and "Law Office of Bruce A. Sholes" is one of form, not substance.

(Campbell I, Dkt. 47, 3:25.) It also ignores this Court's Order that the summons served

on "Law Offices of Bruce Sholes, P.L.L.C." and filed with the Court on September 19,

2005, (Campbell I, Dkt. 16) shall be amended, *nunc pro tunc*, August 26, 2005, to read

"Law Office of Bruce A. Sholes." (Campbell I, Dkt. 47, 4:9-14). Thus, because this

Court has determined that the two purported legal entities are one and the same, and

because this Court has held that service was properly effected upon that entity,

Defendant's argument that his law firm has never been properly served is incorrect.

To the extent Sholes argues that the default judgment was entered against him

personally, such an argument is meritless. Defendant is correct that Bruce A. Sholes was

dismissed from the underlying suit in his individual capacity, most recently on March

14th, 2006. (Campbell I, Dkt. 20, 5:10-11.) However, the entry of default that preceded

the default judgment at issue only concerned Defendant Law Offices, *not* Sholes.

(Campbell II, Dkt. 55, 3:11-12.) The process of entering a default judgment is a two-step

process. See Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986) (describing the

sequential process under Fed. R. Civ. P. 55); see also Fed. R. Civ. P. 55(a)-(b) (describing

the processes of "Entering a Default" and "Entering a Default Judgment"). Therefore,

because Sholes in his individual capacity was not a part of the initial entry of default, the default judgment cannot pertain to Sholes in his individual capacity. (Campbell II, Dkts. 55, 56.)

### b. Statute of Limitations

Defendant next argues that the Arizona one-year statute of limitations on malicious prosecution claims applies in the instant case. (Campbell I, Dkt. 75, Def.'s Mot., 11:6-9.) The Court entered final judgment in favor of Campbell in the underlying fraud suit on March 26, 2003. (Oasis, Dkt. 56.) As a result, Defendant contends that Plaintiffs were barred from bringing an action for malicious prosecution later than March 26, 2004. Since Plaintiffs' malicious prosecution claim was filed in this Court on March 23, 2005 (Campbell I, Dkt. 1), two years after the final judgment in the underlying case, Defendant argues that Plaintiffs are time-barred by the statute of limitations. (Campbell I, Dkt. 75, Def.'s Mot., 11:6-9.)

When determining which state's choice of law rules to use in diversity cases, the Ninth Circuit has held that the rules of the forum state apply. Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002). Arizona courts follow the Restatement (Second) of Conflict of Laws in choice of law questions. Id. (citing Lucero v. Valdez, 180 Ariz. 313, 884 P.2d 199, 201 (Ct. App. 1994)). According to the Restatement, courts should apply the law of the state with the "most significant relationship" to the parties and the dispute. Id. at 496. When an allegedly wrongful case is prosecuted in Arizona and when a related malicious prosecution complaint is filed in Arizona, Arizona state law applies. In re Am. Cont'l Corp./Lincoln Sav. & Loan Secs. Litig., 845 F. Supp. 1377, 1384 (D. Ariz. 1993) (citing Engel v. CBS Inc., 981 F.2d 1076 (9th Cir.1992)). Thus, Defendant's argument that the one-year Arizona statute of limitations for malicious prosecution claims applies is correct.

Unfortunately for Defendant, this fact does not end the inquiry. Statutes of limitation are enacted in order to give defendants reasonable and timely notice of a claim that has been brought against them. Templer v. Zele, 166 Ariz. 390, 391, 803 P.2d 111, 112 (Ct. App. 1990) (citing Long Island Trust Co. v. Dicker, 659 F.2d 641, 647 (5th Cir.

1980)).  Arizona has enacted a "savings statute"[5] that allows a plaintiff an additional six

months to refile an action that would otherwise be barred as untimely, so long as the

original claim was brought within the time limited for the action.  Arizona Revised

Statutes ("A.R.S.") § 12-504.

    The "savings statute" evolved from the common law doctrine of equitable tolling,

which was developed in an effort to adjudicate claims on their merits where (1) parties

had timely notice of the first claim; (2) there would be no prejudice to the defendant in

gathering evidence to defend the second claim; and (3) there was reasonable and good

faith conduct by the plaintiff in prosecuting the first action and diligence in filing the

second action.  Jepson v. New, 164 Ariz. 265, 271, 792 P.2d 728, 734 (1990) (quoting

Hosogai v. Kadota, 145 Ariz. 227, 700 P.2d 1327 (1985)).  The Arizona Supreme Court

has held that when these factors exist, the purposes of statute of limitations are furthered.

Id.  The Arizona savings statute applies equally to claims started in other states,

"including cases that were dismissed for lack of personal jurisdiction."  Templer, 166

Ariz. at 392, 803 P.2d at 112.

    This Court has previously held that, by filing a Motion to Dismiss in the instant

case, Defendant had adequate notice of the proceedings filed against the Law Offices.

(Campbell I, Dkt. 47, 4:9-10.)  Further, Defendant does not argue that there would be any

prejudice to him by having to defend this action.  In fact, Defendant emphasizes his

efforts to defend the instant case in both his Motion and his Reply.  (Campbell I, Dkt. 75,

Def.'s Mot., 8-9; Dkt. 91, Def.'s Reply, 3:11-13.)  Moreover, in the Complaint, Plaintiffs

explain that the malicious prosecution claim was originally brought in California state

court, within the time limit for that action.  (Campbell I, Dkt. 1, 4:14.)  Defendant does

_____

[5]A.R.S. § 12-504(A) reads, in part, "If an action is commenced within the time limited
for the action, and the action is terminated in any manner other than by abatement, voluntary
dismissal, dismissal for lack of prosecution or a final judgment on the merits, the plaintiff,
or a successor or personal representative, may commence a new action for the same cause
after the expiration of the time so limited and within six months after such termination."

not dispute this claim. Plaintiffs' Complaint further explains that at the time the Complaint was filed with this Court, the California action was still pending. (Id. at 4:18.) Defendant does not dispute this contention either. Indeed, Defendant seems to concede this fact by his assertion that the California claim was not dismissed until March 8, 2007. (Campbell I, Dkt. 91, Def.'s Reply, 7:14-15.) Because the California action was not dismissed until March 8, 2007, and because the factors furthering the purposes of the statute of limitations are present, this Court finds that Plaintiffs were well within the parameters of A.R.S. § 12-504 when they filed their Complaint in Arizona on March 23, 2005.

However, Defendant argues that the savings statute should have begun tolling upon Sholes' individual dismissal from the California case rather than when the entire action was terminated. (Id. at 7:8-15.) However, Defendant does not cite to any legal authority supporting this argument and this Court can find none. Further, a plain reading of the statute's text suggests that Defendant's interpretation is incorrect. A.R.S. § 12-504 reads, in part, "If an action is commenced within the time limited for the action, *and the action is terminated* in any manner" (emphasis added). Nowhere in the text of the savings statute is there any indication that Plaintiffs were required to file new complaints against the several defendants individually, and this Court will not read such a requirement into the statute.

Defendant also argues that Plaintiffs cannot avail themselves of the savings statute because it was not specifically pled in the Complaint. (Campbell I, Dkt. 91, Def.'s Reply, 6:15-20.) In support of this argument, Defendant cites McKernan v. Dupont, wherein the court stated, "[t]he plaintiff bears the burden of demonstrating the circumstances justifying relief under the savings statute." 192 Ariz. 550, 556, 968 P.2d 623, 629 (Ct. App.1998), overruled on other grounds by Panzino v. City of Phoenix, 196 Ariz. 442, 445 n.3, 999 P.2d 198, 201 n.3 (2000). Defendant's reading of McKernan is unduly restrictive. Plaintiffs' Complaint provides approximately one and one-half pages of facts that justify relief under the doctrine of equitable tolling. (Campbell I, Dkt. 1, 4-5.)

Defendant's argument that Plaintiffs did not demonstrate the circumstances justifying relief essentially rests on the fact that Plaintiffs' Complaint uses the words "equitable tolling" rather than "savings statute." Such a narrow reading of <u>McKernan</u> both ignores the fact that A.R.S. § 12-504 replaced the doctrine of equitable tolling and undermines the "broad and liberal purpose" of the savings statute that "is not to be frittered away by any narrow construction." <u>Templer</u>, 166 Ariz. at 391, 803 P.2d at 111. Furthermore, courts are granted broad discretion in determining whether to grant relief under the savings statute. <u>Jepson</u>, 164 Ariz. at 274, 792 P.2d at 737. As such, this Court finds that Plaintiffs have met their burden with regards to A.R.S. § 12-504 and can make use of the statute's exception to the one-year statute of limitations.

### c. Malicious Prosecution

Defendant's third argument is that Plaintiffs cannot prove that the original fraud action was motivated by malice. In the context of a civil action, a plaintiff must prove five elements to prevail on a malicious prosecution claim: "Plaintiff must prove defendant (1) instituted a civil action which was (2) motivated by malice, (3) begun without probable cause, (4) terminated in plaintiff's favor and (5) damaged plaintiff." <u>Bradshaw v. State Farm Mut. Auto. Ins. Co.</u>, 157 Ariz. 411, 417, 758 P.2d 1313, 1319 (1988) (citing <u>Carroll v. Kalar</u>, 112 Ariz. 595, 596, 545 P.2d 411, 412 (1976)). Of these five, the central element in a malicious prosecution claim is malice. <u>Cullison v. City of Peoria</u>, 120 Ariz. 165, 169, 584 P.2d 1156, 1160 (1978).

Proof of intent to injure is not required to show malice. <u>Bradshaw</u>, 157 Ariz. at 418, 758 P.2d at 1320 (citing Restatement (Second) of Torts § 676 comment c). Rather, "a plaintiff must prove that the initiator of the action primarily used the action for a purpose 'other than that of securing the proper adjudication of the claim.'" <u>Id.</u> at 418-19, 758 P.2d at 1320-21 (quoting Restatement (Second) of Torts § 676). Defendants initially presented their evidence of Plaintiffs' alleged fraud in Bankruptcy Court. (<u>Campbell I</u>, Dkt. 75, Ex. A, Def.'s Aff. ¶ 4.) Defendants' arguments were denied, both by the Bankruptcy Court and by the United States Bankruptcy Appellate Panel of the Ninth

Circuit; this decision was made final on June 12, 2002. (<u>Campbell I</u>, Dkt. 90, Pls.' Resp., 2-3.)

After Defendants brought their subsequent fraud action, Plaintiffs removed to District Court where Judge Murguia held that the action was an improper collateral attack on the bankruptcy court's ruling. (<u>Oasis</u>, Dkt. 55.) Defendants did not appeal this decision. Moreover, Plaintiffs allege that, in holding that the doctrine of collateral estoppel barred Defendants' fraud claim, Judge Murguia noted that Defendants failed to present any admissible evidence. (<u>Campbell I</u>, Dkt. 90, Pls. Resp., 4:21-23.) Defendants apparently concede this fact. (<u>Campbell I</u>, Dkt. 75, Ex. A, Def.'s Aff., ¶ 6.) Because Defendants had neither legal nor evidentiary support for their fraud claim, this Court finds that Defendants' purpose was not proper adjudication of their claim.

## 2. Whether Defendant's Culpable Conduct Led to the Default

Even if Defendant was found by the Court to have a meritorious defense, Defendant's culpable conduct would still preclude setting aside the default judgment. On August 29, 2005, Defendants filed a Motion to Dismiss on several grounds, including untimely and insufficient service of process. (<u>Campbell I</u>, Dkt. 13, 6-7.) Perhaps anticipating the success of Defendants' Motion, Plaintiffs served Defendants through the Arizona Corporation Commission on September 19, 2005. This Court granted Defendants' Motion, in part, on March 14, 2006. (<u>Campbell I</u>, Dkt. 20.) As a result of this Order, Defendants Sholes, Judy Fernando-Sholes, and John C. Kubasch were dismissed without prejudice. (<u>Id.</u> at 5:10-11.) Plaintiffs subsequently filed a Motion for Relief from the Court's Order, which this Court denied on May 25, 2006. (<u>Campbell I</u>, Dkts. 22, 42.) Sholes claims that, upon the Court's May 25, 2006 ruling, he believed that the action against him had ended, and that Plaintiffs would not pursue any further claims against him. (<u>Campbell I</u>, Dkt. 75, Def.'s Mot., 4:21-23.)

However, before this Court had ruled on Plaintiff's Motion for Relief, Defendant filed another Motion to Dismiss on May 18, 2006. (<u>Campbell I</u>, Dkt. 40.) Defendant's Motion alleged, *inter alia*, that service through the Arizona Corporation Commission was

improper.  (Id. at 7:3-8.)  Sholes claims that he thought this Motion was moot after the Court's May 25th ruling, and as such it did not require further attention.  (Campbell I, Dkt. 91, Def.'s Reply, 3:8-11.)  Sholes further claims that, due to upheaval in his personal and professional life, he chose to end his law practice.  (Campbell I, Dkt. 75, Def.'s Mot., 4-5.)  Because Sholes believed he was free of any legal obligations and was no longer planning on practicing law, he decided that he no longer needed to check for any notices directed to him through the District Court's Electronic Case Filing ("ECF") system.  (Id. at 5:3-5.)

Moreover, Sholes claims that two additional circumstances detract from his culpability with regards to obtaining notice of proceedings in the instant case.  First, Sholes contends that the ECF system listed an incorrect email address in his contact information. (Id. at 5:19-25.)  Second, Sholes asserts that the State Bar suspended the electronic transmission of all documents directed to him through the ECF system, apparently as a result of the State Bar's investigation and subsequent suspension of Sholes from the active practice of law.  (Id. at 5-6.)  While not explicitly stated, it appears to the Court that Sholes is suggesting that these intervening factors would have made it impossible for him to obtain notice of the Court's Order on his May 18, 2006 Motion to Dismiss, had he made an effort to obtain said notice.

Plaintiff responds that it is not excusable for a licensed attorney to fail to obtain and carefully review the Court's ruling on the attorney's own motion.  (Campbell I, Dkt. 90, Pls.' Resp., 24:25-26.)  However, a defaulting party is only culpable "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond."  TCI Group Life Ins. Plan, 244 F.3d at 698.  Defendant contends that this failure to respond was not intentional because Sholes had no notice that Plaintiffs had continued to pursue their claims after his dismissal.  (Campbell I, Dkt. 75, Def.'s Mot., 10:18-19).  Moreover, Sholes highlights his repeated efforts to defend the instant action as evidence that he would not intentionally stop defending the action if he knew it was ongoing.  (Id. at 10:22-24.)

The Court is required to accept all factual allegations made by the moving party in a Rule 60(b) motion. <u>Falk</u>, 739 F.2d at 464. However, as a general rule, Rule 60(b) is not used to remedy strategic litigation decisions that the party later regrets. <u>See</u> <u>Latshaw v. Trainer Wortham & Co., Inc.</u>, 452 F.3d 1097, 1100-01 (9th Cir. 2006); <u>Casey v. Albertson's, Inc.</u>, 362 F.3d 1254, 1260 (9th Cir. 2004) ("As a general rule, parties are bound by the actions of their lawyers, and alleged attorney malpractice does not usually provide a basis to set aside a judgment pursuant to Rule 60(b)(1)."). Rule 60(b) is also generally not used to remedy mistakes on the part of a litigant that result in unfavorable judgments. <u>Engleson v. Burlington N. R.R. Co.</u>, 972 F.2d 1038, 1043 (9th Cir. 1992) ("Neither ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1).") (internal quotation marks and citations omitted).

While Defendant provides some support for the contention that failure to receive notice through the District Court's ECF system constitutes excusable neglect, such is not the case here. Defendant did not fail to receive notice via the ECF system; rather, notice was sent to Sholes but he failed to access the ECF system and retrieve it. Had Sholes taken any steps to remedy the fact that he did not know the password to his ECF account, he could have discovered the incorrect email address on file with the Court and corrected it, as required per the ECF Administrative Policies and Procedures Manual. U.S. Dist. Court for the Dist. of Ariz., Electronic Case Filing Administrative Policies and Procedures Manual 4 § C (2009), *available at* http://www.azd.uscourts.gov/azd/cm-ecf.nsf/files/$file/adm+manual.pdf. Subsequently, Sholes would have been able to receive updates on the pending case against his firm.

Even once Sholes' ECF account was suspended by the State Bar, Sholes had other avenues available to him. Like any party involved in a lawsuit, Sholes could have contacted the Court Clerk or opposing counsel, or he could have retained an attorney to represent him for the remainder of the lawsuit. Additionally, Sholes had a duty to read this Court's Orders thoroughly. If he had, Sholes would have known that his law firm was still involved in the malicious prosecution action and that he was required to respond

to Campbell's Complaint.  In either event, this Court fails to see how Sholes' actions

constitute *excusable* neglect.

### B.    Fraud Upon the Court

Defendant also argues that this Court should invoke Rule 60(b)(3) and vacate the

default judgment due to fraud by Plaintiffs.  Defendant alleges that Plaintiffs' practice of

ignoring Sholes' prior dismissals from the malicious prosecution claim constituted fraud

upon the court.  (Campbell I, Dkt. 75, Def.'s Mot., 13:1-17.)  Defendant further alleges

that Plaintiffs' representation of the status of the parties involved in the case was fraud

upon the court.  (Id.)  For the foregoing reasons, both these arguments fail.

When a party seeks to vacate a default judgment on the basis of fraud, the "clear

and convincing" standard applies.  Atchison, T. & S.F. Ry. Co. v. Barrett, 246 F.2d 846,

849 (9th Cir. 1957) (quoting Assmann v. Fleming, 159 F.2d 332, 336 (8th Cir. 1947)).

Moreover, the alleged fraud must be such that it prevents a party from "fully and fairly

presenting his case or defense."  Id.  Fraud upon the court is "only that species of fraud

which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of

the court so that the judicial machinery can not perform in the usual manner its impartial

task of adjudging cases."  In re Intermagnetics Am., Inc., 926 F.2d 912, 916 (9th Cir.

1991).  Rule 60(b)(3) is a remedial statute and is to be employed liberally, however "there

still exists a definite burden on the moving party to prove the existence of the fraud, or

other misconduct, or other cause for relief."  Atchison, 246 F.2d at 849 (citations

omitted).  When analyzed under this framework, Defendant has failed to meet his burden

under the clear and convincing standard.

First, as discussed above, Sholes' prior dismissals are not at issue because Sholes

is no longer a party to the case in his individual capacity.  As such, Plaintiffs had no duty

to discuss the procedural posture of an unrelated party.  Further, Sholes has always been a

part of this lawsuit in multiple capacities, but his dismissal in one of those capacities does

not constitute a blanket dismissal in all respects.  Defendant describes the distinction

between Sholes' inclusion in his various capacities (e.g., individually; as the husband of

1  Judy Fernando-Sholes; and doing business as Law Offices of Bruce A. Sholes) as

2  "laughable," yet Defendant has never argued that any of these parties were improperly

3  brought into the action and does not now.  (Campbell I, Dkt. 75, Def.'s Mot., 13:18-21.)

4  Defendant cannot assert that a properly joined defendant is dismissed from a lawsuit

5  solely on the basis of a relationship with another dismissed defendant.

6       Second, Plaintiffs' alleged misrepresentation of the status of the parties is actually

7  an effort to clarify which of the interrelated parties is subject to the default judgement.

8  As discussed above, Plaintiffs' Complaint listed Sholes as a defendant in several

9  capacities.  (Campbell I, Dkt. 1.)  Moreover, Sholes has appeared previously in order to

10 fight service of process based on alleged technical defects in the named parties.

11 (Campbell I, Dkts. 40, 75.)  Significantly, this Court has already ruled that the distinction

12 between  "Law Offices of Bruce A. Sholes" and  "Law Offices of Bruce A. Sholes,

13 P.L.L.C." is one of form, not substance, and thus Defendant Law Offices had been

14 properly served.  (Campbell I, Dkt. 47, 3:25.)  The Court also cited to authorities

15 supporting the notion that so long as all involved parties understand to whom the

16 litigation pertains, the Court will not allow suits to be thrown out for trivial reasons.  (Id.

17 at 3-4.)  In an effort to adjudicate the case on its merits in a timely fashion, rather than

18 quibble over the distinction Defendant sought to employ, this Court saw fit to amend the

19 offending summons *nunc pro tunc*, August 26, 2005, so that Plaintiffs would not need to

20 re-serve Defendant Law Offices.  (Id. at 10-14).  Thus, the representation Defendant

21 complains of was one made by the Court, not by Plaintiffs.  As such, this Court fails to

22 see how this representation could amount to fraud upon the court.

23       **C.    Rule 55 Hearings**

24       Finally, Defendant argues that he was deprived of the notice required by Federal

25 Rule of Civil Procedure 55(b)(2)[6], and that this lack of notice justifies setting aside the

26

27       [6]Rule 55(b)(2) reads, in part, "If the party against whom a default judgment is sought
28 has appeared personally or by a representative, that party or its representative must be served

default judgment under Rule 60(b). Defendant cites <u>In re Roxford Foods, Inc.</u>, 12 F.3d 875 (9th Cir. 1993) in support of his argument that a failure to provide Rule 55 notice is a serious procedural irregularity that requires that this Court vacate the default judgment. (<u>Campbell I</u>, Dkt. 75, Def.'s Mot., 12:20-26.) However, this case does not support Defendant's position. "The failure to provide Rule 55(b)(2) notice, *if the notice is required*, is a serious procedural irregularity." <u>Roxford Foods</u>, 12 F.3d at 879 (quoting <u>Wilson v. Moore & Assocs., Inc.</u>, 564 F.2d 366, 369 (9th Cir. 1977)) (emphasis added). Before a discussion of whether notice was given can take place, it must be determined whether notice is even required.

"The district court's decision whether to enter a default judgment is a discretionary one." <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980) (citations omitted). Additionally, Rule 55 uses permissive, rather than mandatory, language with regards to evidentiary hearings, so the lack of a hearing prior to the entry of a default judgment does not immediately violate Rule 55. Courts have wide discretion to determine whether they need to conduct a hearing to determine the amount of damages prior to entering a default judgment. <u>TeleVideo Sys., Inc. v. Heidenthal,</u> 826 F.2d 915, 917-18 (9th Cir. 1987) ("Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment").

Because Plaintiffs provided detailed accounting, supported by evidence, of the amount of special and general damages they sought, no hearing was needed to validate that amount. Indeed, in their Motion for Default Judgment, Plaintiffs provided the Tucson district judge with approximately ten pages of information detailing the claimed injuries. (<u>Campbell II</u>, Dkt. 79, 22-32.) Also considering the fact that more than three months passed without Defendant making any attempt to refute the damages Plaintiffs

---

with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."

1  sought[7], the Tucson district judge was well within its discretion when it determined that a

2  hearing regarding damages was not required.

3  **II.    Defendant's Rule 59(e) Motion**

4          In the alternative to Defendant's Rule 60 motion, Defendant also asks the Court to

5  amend or modify the default judgment amount pursuant to Federal Rule of Civil

6  Procedure 59(e). Parties are entitled to relief under Rule 59(e) if "(1) the district court is

7  presented with newly discovered evidence, (2) the district court committed clear error or

8  made an initial decision that was manifestly unjust, or (3) there is an intervening change

9  in controlling law." United Nat'l Ins. Co. v. Spectrum Worldwide, Inc., 555 F.3d 772,

10  780 (9th Cir. 2009) (quoting Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th Cir.

11  2001)). Defendant does not argue that there is either newly discovered evidence or an

12  intervening change in the law controlling this case, so the Court's analysis will focus on

13  the question of clear error and manifest injustice.

14          Defendant asserts that in light of the arguments raised in his Rule 60 motion,

15  upholding the default judgment would be manifestly unjust and fundamentally unfair.

16  (Campbell I, Dkt. 75, Def.'s Mot., 14:19-22.) However, as discussed above, Defendant's

17  arguments with regards to his Rule 60 motion all fail. Simply put, any lack of notice

18  suffered by Defendant was a result of Sholes' culpable conduct, Sholes' prior dismissals

19  in his individual capacity are no longer a factor in the instant litigation and are thus

20  irrelevant, and Plaintiffs have proven all the elements of their malicious prosecution

21  claim. Furthermore, this Court agrees with Plaintiffs that Defendant's understandable

22  disagreement with the amount of damages sought does not mean that those damages are

23  unconscionable. Plaintiffs provided the Court with sufficient support for the damages

24

25          [7]Plaintiff's Application for Default Judgment was filed on April 15, 2008. (Campbell

26  II, Dkt. 79.) The Tucson Division's Order granting default judgment was entered on July 29,
2008. (Campbell II, Dkt. 80.) Plaintiff's Notice of Filing Proposed Default Judgment was

27  filed on July 29, 2008. (Campbell II, Dkt. 81.) Default Judgment against Law Office of Bruce

28  A. Sholes was entered on August 8, 2008. (Campbell II, Dkt 82.)

sought, whereas Defendant provides no support for his assertion that the amount is unconscionable.

### CONCLUSION

The evidence before the Court is overwhelming that Defendant knew he and his law firm were named as two separate defendants in the instant case, and that Defendant had been provided adequate notice of the ongoing proceedings against his firm. Accordingly, Defendant cannot prove either excusable neglect or fraud upon the court. See Fed. R. Civ. P. 60(b). Defendant also cannot prove that he was deprived of a hearing as required by Federal Rule of Civil Procedure 55(b)(2), or that the Court committed clear error or manifest injustice with regards to the amount of damages sought by Plaintiff. See Fed. R. Civ. P. 59(e).

Based on the foregoing,

**IT IS HEREBY ORDERED DENYING** Defendant Law Offices of Bruce A. Sholes' Motion to Set Aside or Amend Default Judgment (Dkt. 75).

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to terminate this case.

DATED this 8th day of July, 2009.

Stephen M. McNamee
United States District Judge

- 21 -